Fred M. Swartz
vs. } No.56888
Edwards Motor Car Co.
June 24, 1926

CAPOTOSTO, J. The plaintiff brought suit to recover certain payments which he had made to one Oliver D. Edwards, doing business as the Edwards Motor Car Company, in consequence of the purchase under a conditional contract on September 16, 1922, of a 1923 Velie sport model automobile, which automobile the plaintiff now claims to have been of unmerchantable quality by reason of a defectively operating clutch. The jury returned a verdict for the plaintiff in the sum of $1692 plus $297.64 interest, or $1989.64 in all. At the time of the bargain the plaintiff turned in a Standard touring car which was accepted by the defendant in part payment of the Velie car at the agreed value of $750 and signed a series of promissory notes for the balance of $1300 payable at given intervals.

The plaintiff's principal complaint is that the defendant sold him an automobile of an unmarketable nature by reason of the clutch operating in such a defective manner as to make the car unfit for use and dangerous to life.

The defendant, on the other hand, says that the clutch used in that particular car was of standard make and free from defects and that, therefore, the particular automobile in question was as merchantable as any automobile of that type could be.

The main issue involved is: Did the defendant sell to the plaintiff an automobile reasonably merchantable or did he sell him a series of automobile parts, each merchantable in itself but defective for reasonable use in their ultimate composite shape of an automobile by an ordinarily prudent person with fair comfort and safety.

The conduct of the parties as to the main point at issue is, therefore, of serious importance in considering this case.

Without recounting in detail the plaintiff's actions, it is sufficient to say that from the very first, almost immediately after he received the car, the plaintiff began to complain to the

defendant about the clutch; that he left the car for repairs to the clutch with the defendant at various times and for varying periods, and that the defendant, according to the plaintiff, admitted on several occasions that something was wrong with the clutch and that he would either fix the clutch or install a new one. In spite of all these promises made right along by the defendant, almost from the date of purchase up to May, 1923, the plaintiff says that nothing was ever done to remedy the defect; that he, relying upon the defendant's promises, kept on making the payments under the contract as they became due, and that finally, sometime in the first half of May, 1923, the defendant unjustly retained the automobile, which had been left with him for repairs to the clutch, under a claim of money due, when, in fact, the note representing the obligation was in the hands of a third party and not yet matured.

The defendant admits that the plaintiff has continually complained about the clutch and that he had received the car on various occasions for the specific purpose of rectifying the complaint, but denied that he ever promised to give the plaintiff a new clutch. He explained further that the clutch was a standard clutch; that it required a certain tension to fit it to that particular type of car; that the clutch had the necessary tension; that there was no defect in the clutch, and that he had received the car for repairs to the clutch on these different occasions "to please" the plaintiff, whom he considered unreasonable as to the operation of that particular clutch. Side by side with this line of testimony was the evidence of the defendant himself that in May, 1923, he sent for an expert from the Boston office, one Leo Minutelli, to come to Providence and examine the plaintiff's car. Mr. Minutelli later testified that he had examined the car; that he had spent the greater part of a day taking down, examining and reassembling the clutch; that he had found no defect in the clutch and that the particular car in question was no different from other cars of the same type. The statement by the defendant Edwards, on cross-examination, to the effect that it might be that this was one of the clutches where fallibility of workmanship might produce a faulty result is of some significance in the consideration of the case as a whole.

In support of the plaintiff two automobile repair men, Archie Thomas and Albert J. Martin, who had examined the clutch externally and who had driven the car for at least a short distance at different times, stated that in their opinion the automobile could not be driven on account of clutch trouble. Thomas, after stating that the clutch was so hard to operate that he did not believe any man's leg could stand it, said that in his opinion the car was not reasonably mechanically fit to use as an automobile because it could not be operated unless you endangered life, especially in traffic. He further testified that he had gone with the plaintiff to the defendant's place of business at least three times with reference to the clutch; that the last time he was there he, himself, told the defendant that there was something wrong with the clutch, that the trouble was either with the spring board inside or that it was out of line somewhere; that the defendant tried it in his presence, admitted that it was hard, and promised either to fix the clutch then in the car or install a new one. The other witness, Albert J. Martin, said that the car by reason of a defectively operating clutch, was not mechanically fit to be operated in safety; that it would be dangerous to run it in traffic, and that the car could not reasonably be used by the

average driver of automobiles.

One or two employees connected with the defendant's sales department testified that they had driven the car on various occasions and found no difficulty in operating it. One Claude G. Porter, who bought the automobile from the defendant in August, 1923, some three months after the defendant had taken it away from the plaintiff, said that he had experienced no difficulty in driving the car. At this point it may be important to note that the history of the car and what happened to it between the time that Minutelli, the expert from Boston, examined the clutch for the "greater part of a day" and the time it was sold to Porter is clouded in considerable doubt. Furthermore, while employees of the defendant's sales department testified as to the mechanical fitness of the car, not a single mechanic from the defendant's repair shop, where the car presumably had been sent for examination, if not for repair of the clutch, was offered as a witness or his absence explained. During the life of the agreement and while the controversy as to the fitness of the automobile was going on, the original or substituted notes signed by the plaintiff payable to the defendant were transferred by the defendant to the Industrial Trust Company. Finally the defendant became financially involved, gave up his business in Providence and returned to Washington, D. C. The automobile which had been left by the plaintiff and received by the defendant in May, 1923, for further examination and repair, if necessary, of the clutch, was finally retained without any real justification by the defendant and sold in the following August to Porter.

The principal contention urged at the hearing on the defendant's motion for a new trial was that the plaintiff had failed to prove by a fair preponderance of the evidence that the automobile sold to the plaintiff was unmerchantable. The main argument presented was to the effect that the automobile in question was supplied with a Borg & Beck clutch; that the Borg & Beck clutch was a recognized and standard article; that the particular clutch showed no defects when examined by the defendant's expert, and that, therefore, the automobile was a standard automobile of that particular type. Counsel for the defendant vigorously endeavored to minimize the testimony of Thomas and Martin, the experts for the plaintiff, and practically asked the Court to disregard the testimony of the defendant Edwards, saying that he "was not relying much on Edwards' testimony."

The plaintiff in this case did not buy an automobile clutch; he bought an automobile which could be reasonably operated as a vehicle by the ordinary man. While the clutch in itself may have been free from defects, it does not follow that the completed article, namely, the automobile which was ultimately sold to the plaintiff, was mechanically fit. The assembling and adjustments necessary and incidental to the construction of an automobile, requiring, as they do, mechanical skill and attention, may produce, in spite of the use of acceptable standard parts, quite different results in the ultimate products. The question, therefore, in this case is not whether the clutch in itself was free from defects, but rather whether the automobile which the plaintiff received was so mechanically constructed as to be acceptable to the average person as reasonably used, especially in the operation of the clutch. The plaintiff made early and immediate complaint about the defects which he claimed existed. The mechanics, Thomas and Martin, who testified for the plaintiff, were explicit and positive that the automobile which the defendant had sold to the plaintiff was not fit for use, espe-

cially in traffic, owing to the defective functioning of the clutch. The defendant himself repeatedly took back the automobile for the ostensible purpose of repairing the clutch, but either did nothing or else was unsuccessful in discovering the real trouble. His explanation that he took the automobile so many times from the plaintiff simply to satisfy a petulant customer did not carry conviction. The course of his general conduct rather tends to characterize the defendant as a dealer who, being conscious of having sold a defective article, seeks by promises and pretended acts to get as much money and patience and reliance upon another's word would cause the purchaser to pay upon existing obligations which were no longer in the seller's possession.

This court believes that the evidence as a whole, keeping the defendant's testimony especially in mind, fairly establishes the acknowledgment by the defendant of having sold the plaintiff an automobile which was supplied with a defectively operating clutch. It is not strange, therefore, that counsel, in arguing his motion for a new trial on the ground that the plaintiff had failed to sustain the burden of proof, should attempt to belittle and, if possible, overlook the evidence of the defendant himself. The preponderance of the credible testimony in this case, therefore, shows that the defendant sold to the plaintiff an automobile which was not merchantable owing to a defectively operating clutch; that the plaintiff made immediate and continued complaints; that the defendant acknowledged the justice of the plaintiff's claim and promised at different times to remedy the defect; that the plaintiff relied upon the defendant's promises and continued to make payments from time to time while his automobile was supposed to be undergoing examination and repair by the defendant for the elimination of the trouble complained of; that finally the plaintiff not only did not receive an automobile which could be reasonably operated, but the automobile was taken away from him by the defendant upon a claim of payment which had no legal justification.

The jury returned a verdict which reimbursed the plaintiff for the money which he had actually paid plus the agreed trade value of the Standard car which the defendant received from the plaintiff at the very inception of the transaction.

The verdict does substantial justice between the parties and is supported by a fair preponderance of the evidence.

Motion for new trial denied.

For Plaintiff: Frank H. Bellin.

For Defendant: Lawrence F. Nolan.